Bellacosa, J.
(dissenting). Judge Ciparick and I would affirm the lower courts’ rejection of petitioner’s lawsuit. The majority centers its reversal and grant of relief in this case on coercion. That must, however, be coupled with a finding that the Alcohol and Substance Abuse Treatment (ASAT) Program of the New York State Department of Correctional Services fosters a religious practice in the first place. The building blocks rest also on the attribution to the ASAT Program of "religious-oriented practices and precepts” (majority opn, at 677 et seq.) culled together from the Alcoholics Anonymous (A.A.) Twelve Step paradigm. The combination, tied together by a tenuous application of a coercion concept, produces a declaration that the Establishment of Religion Clause of the United States Constitution has been violated (US Const 1st Amend).
We conclude that the allegedly compelled religious root — the deistic symbols and allusions selected principally from A.A. literature concerning its Twelve Step Program — does not justify the judicial relief that ultimately excuses petitioner-appellant inmate on First Amendment grounds from the benefits of the ASAT Program, when he wishes to avail himself of the Correctional Services Department’s Family Reunion (expanded visitation) Program. The key premises of our votes to affirm include:
• The ASAT Program and this case, analyzed within the three-pronged criteria of Establishment Clause review (see, Lemon v Kurtzman, 403 US 602) and recent, relevant authorities, do not breach constitutional boundaries;
• The ASAT Program is inappropriately analogized to uniquely sensitive public school settings under First Amendment jurisprudence;
• The ASAT Program is a rationally justified and voluntary means of serving the important and predominantly secular State goal of treating and reducing inmate substance abuse;
• The ASAT Program, to the extent that it incorporates suggested aspects of the A.A. Twelve Step Program that some may perceive as somewhat religious, remains overwhelmingly secular in philosophy, objective and operation;
*698 • Petitioner-appellant’s challenge and proffered record lack the quality and quantum necessary to justify this first impression holding.
L
ASAT is the primary umbrella program operated by the New York State Department of Correctional Services to provide treatment options for chemically dependent inmates. Not all of the substance abuse programs offered by the Department are considered to be ASAT Programs; only those operated or overseen by ASAT staff and complying with program standards are treated as such. According to the ASAT Program Operations Manual, the primary mission of ASAT is "[t]o prepare chemically dependent inmates for return to the community and to reduce recidivism * * * by providing education and counseling focused on continued abstinence from all mood altering substances and participation in self-help groups based on the 'Twelve Step’ approach.” The ASAT philosophy declares that it uses the "12-Step approach to recovery” and that "[b]y working the 12 suggested steps” a person achieves "a realistic understanding of himself/herself” (emphasis added). It continues: "The 12 steps of A.A. act as a guide which provide the tools to build a new way of life without the use of alcohol and/or drugs, one day at a time” to prevent relapses upon release (emphasis added).
The services offered through ASAT involve three main components. First, treatment, education and family counseling services are formally part of the ASAT Program. Second, participants are urged to use other academic, vocational, and social or medical services made available to them although not part of the formal ASAT Program. Third, enrollees are required to participate in independent, volunteer-led self-help groups. The self-help group component provides the sole and slender nexus for the controversy here and the declaration of unconstitutionality. In that respect, the ASAT Program Manual states that "[i]t should be noted that self-help groups such as A. A. and N.A. are not part of the formal ASAT Program but are an important adjunct to it. The groups must be separated from the ASAT Program and not supervised or chaired by ASAT staff. Affiliation and employee involvement is counter to self-help group traditions” (emphasis added).
*699 The basic ASAT treatment method encompasses approximately 330 hours of counseling and therapy spread over a 26-week period. This includes mostly lectures, seminars, group discussions, and counseling focused on addiction and recovery. Self-help group participation is not a predominant part and, indeed, constitutes an attenuated feature of the total ASAT experience, consisting of only 26 hours of the total program period. The ASAT Program, rather than commanding some doctrinal hegemony, is thus notable for its diversity, variety, voluntariness and nuanced interplay of various components.
The center of gravity for the resolution of this lawsuit is a finding that the ASAT Program unconstitutionally compels petitioner to join in religious practices as a condition to his receiving the discretionary benefit of the Correctional Services Department’s extra visitation program. The ASAT Program is thus charged with imposing a State endorsement of and entanglement with practices of A.A. deemed religiously intrusive and objectionable. The analysis expressly refers to deistic expressions from A.A.’s Twelve Step modality. Our interpretation of this integral dispositive rationale specifically and fairly identifies its root in a proposition that A.A. advances "religious-oriented practices and precepts” that urge "performance of quite traditional religious devotional exercises” (majority opn, at 677, 688).
A brief overview of A.A. history and its operating principles contradicts the predicate assumptions that drive petitioner’s tenuous theory. A.A. was founded in 1935 as a general concept under which community groups of independent individuals voluntarily join together in common experience and discipline to try to stay sober. The two basic texts of A.A. are Alcoholics Anonymous (Alcoholics Anonymous World Services, Inc. [3d ed 1976] ["the Big Book, The Basic Text for Alcoholics Anonymous”]) and Twelve Steps and Twelve Traditions (Alcoholics Anonymous World Services, Inc. [3d ed 1981]), which were originally published in 1939 and 1952, respectively. Substantially, if not overwhelmingly, they reflect suggested secular and spiritual guideposts, not compulsory religious commandments or tenets of some New-Age or even Old-Time religion.
As the Preface to the "Big Book” states, "[b]ecause this book has become the basic text for our Society and has helped such large numbers of alcoholic men and women to recovery, there exists a sentiment against any radical changes being made in it. Therefore, the first portion of this volume, describing the A.A. recovery program, has been left untouched in the course *700 of revisions made for both the second and the third editions.” A.A. has thus refrained from revising its founding texts to conform to politically correct themes and times or to excise expressions objectionable to the school of "secular individualism” (Dent, Book Review, 46 J Legal Educ 130, 131-134 [1996]).
The United States Supreme Court has itself observed that in considering the principles underlying the Establishment Clause, there may be a " 'tendency of a principle to expand itself to the limit of its logic’; such expansion must always be contained by the historical frame of reference of the principle’s purpose, and there is no lack of vigilance on this score by those who fear religious entanglement in government” (Walz v Tax Commit., 397 US 664, 678-679, quoting Cardozo, The Nature of the Judicial Process, reprinted in Selected Writings of Benjamin Nathan Cardozo, at 127 [Hall ed 1947]). Thus, "the Court consistently has declined to take a rigid, absolutist view of the Establishment Clause. We have refused 'to construe the Religion Clauses with a literalness that would undermine the ultimate constitutional objective as illuminated by history'' [emphasis in original]. * * * In our modern, complex society, whose traditions and constitutional underpinnings rest on and encourage diversity and pluralism in all areas, an absolutist approach in applying the Establishment Clause is simplistic and has been uniformly rejected by the Court” (Lynch v Donnelly, 465 US 668, 678 [emphasis added]; see also, Walz v Tax Commn., 397 US 664, 671, supra; 4 Rotunda and Nowak, Constitutional Law — Substance and Procedure § 21.3, at 459 [2d ed 1992]; Kurland, Religion and the Law of Church and State and the Supreme Court, at 111 [1962]).
Rigidity is eschewed because "[f]ocus[ing] exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause” (Lynch v Donnelly, 465 US 668, 680, supra). The Supreme Court has thus stated that "our precedents plainly contemplate that on occasion some advancement of religion will result from governmental action” (Lynch v Donnelly, supra, at 683). The Court has made it abundantly clear, however, that " 'not every law that confers an "indirect,” "remote,” or "incidental” benefit upon [religion] is, for that reason alone, constitutionally invalid’ ” (Lynch v Donnelly, supra, at 683, quoting Committee for Pub. Educ. v Nyquist, 413 US 756, 771). We are satisfied that perceived religious aspects of A.A. transmuted into ASAT are indirect, remote and incidental, and neither compulsory nor mandatory (see, Lynch v Donnelly, supra). Yet, the majority *701 rules that the United States Constitution and Supreme Court precedents demand a virtually pure secularity (majority opn, at 677, 686, 690). In any event, coercion alone cannot transform such incidentalism into an Establishment Clause violation. There is no theory, case or authority that we know of for a theory with that kind of trumping quality (see generally, Glendon, Law, Communities, and the Religious Freedom Language of the Constitution, 60 Geo Wash L Rev 672, 679 [1992]; see also, Ge-dicks, The Rhetoric of Church and State, at 63-65, 72, 82, 120-121 [1995]).
When A.A.’s Twelve Steps are drawn across the Establishment Clause divide, a challenger must bear a very high burden of demonstrating unconstitutionality beyond a reasonable doubt. The objectant must present more than superficial analysis of the operating principles of the challenged State exertion.
A fair review of the totality of the A.A. message and mission reasonably supports our acceptance of its published and principled representation that its renowned singular aim is simply to help people help themselves in attaining and maintaining sobriety — a salutary public objective pursued through personal, voluntary and secular means. Empirical data makes this goal an especially demonstrable imperative for a rehabilitative correctional facility population. Our examination of the deistic references and semantical icons from the A.A. Twelve Steps discloses a concededly spiritually accented landscape, but not a constitutionally objectionable religious core.
The A.A. Traditions helpfully illustrate the primary and principal effect of the ASAT Program. Tradition Six states, "An A.A. group ought never endorse, finance, or lend the A.A. name to any related facility or outside enterprise, lest problems of money, property, and prestige divert us from our primary purpose.” The "Long Form” of Tradition Ten continues this theme, stating: "No A.A. group or member should ever, in such a way as to implicate A.A., express any opinion on outside controversial issues — particularly those of politics, alcohol reform, or sectarian religion. The Alcoholics Anonymous groups oppose no one. Concerning such matters they can express no views whatever” (emphasis added). These explicit declarations against sectarian preference or promotion are disdained as irrelevancies in the majority’s dispositional analysis (majority opn, at 681, 687, n 5) and turned into a distortion of our dissenting viewpoint (majority opn, at 684).
*702 Notably, too, the reliance upon speculative assertions of some prison staff that ASAT might harbor some religious features based on their personal reading of some of the literature is misplaced and does not materially aid in the resolution of this case. Unfounded, ambiguous and unofficial conclusions provide no basis for arriving at definitive findings regarding State action, with the dispositional and precedential consequences of this ruling.
IL
Our differences, however, must stay focused on the Establishment Clause and the constitutional issue, not on the whole or even selected excerpts of the A.A. message and literature, or A.A. projected into ASAT through A.A.’s original, historical, evolving or modern visage or operational reality. The Supreme Court has stated that "a determination of what is a 'religious’ belief or practice” under the Constitution "may present a most delicate question,” but that if the belief turned on the "subjective evaluation and rejection of the contemporary secular values,” such beliefs would not rest on a religious basis because the choice made by the individual would then be "philosophical and personal rather than religious” (Wisconsin v Yoder, 406 US 205, 215-216; see also, Tribe, American Constitutional Law § 14-6, at 1183 [2d ed 1988]).
A.A. principles unquestionably arise from a secular philosophy and psychology, which espouse a fellowship of different individuals sharing their experiences in a confidential and voluntary manner that can mutually reinforce the individual desire and effort to overcome a terrible addiction and propensity more readily than if people tried to survive and conquer the disabling disease alone. The transcendent, human, spiritual qualities of this commitment and endeavor do not thrust the experience into a religious realm. Nor does the recognition and acceptance of some "Higher Power,” outside of the "Ego,” constitutionally connote a theistic ontology (see, Glendon, op. cit., at 679).
Professor Stephen Carter has noted that the religious characterization with which A.A. is sometimes cloaked does not come from its throngs of participants and beneficiaries, and that constitutional hostility to religion may be lessening (see, Carter, The Culture of Disbelief, at 121, n, and in context at 120-123 [1993]; Carter, The Resurrection of Religious Freedom?, 107 Harv L Rev 118, 119, 130-132, 142; see also, Allegheny County v Greater Pittsburgh Am. Civ. Liberties Union, *703 492 US 573; Abington School Dist. v Schempp, 374 US 203, 205; Gedicks, Public Life and Hostility to Religion, 78 Va L Rev 671; Gedicks, The Rhetoric of Church and State [1995]). Professor Philip Kurland, in a seminal work, urged "neutral principles” of adjudication in such controversies and offered these insights:
"[T]he wisdom of the framers of the first amendment [is] in their objectives of keeping the church free from domination by government and the state free from alliance with religion. * * * The freedom and separation clauses should be read as stating a single precept: that government cannot utilize religion as a standard for action or inaction because these clauses, read together as they should be, prohibit classification in terms of religion either to confer a benefit or to impose a burden. This test is meant to provide a starting point for the solution to problems brought before the Court, not a mechanical answer to them” (Kurland, op. cit, at 111-112 [emphasis added]).
Despite the competition of vocabulary and classifications between secularism versus communitarianism and neutrality versus accommodation, no one should lose sight of the relevant analytic framework and fact that this petitioner’s entire claim is predicated on the Establishment of Religion Clause. He makes no complaint whatsoever of restriction of his freedom to exercise religion or nonreligion. Yet, the majority’s vital building block is a coercion element, applied in a novel fashion as a matter of law that echoes between the twin chords of the First Amendment’s religion clauses. This is far beyond the coerced formal prayer in a school setting in Lee v Weisman (505 US 577) relied on so heavily by the majority (majority opn, at 688, n 6; contrast, Zorach v Clauson, 343 US 306).
We join, nevertheless, in the majority’s hope for no broader precedential and practical sweep than necessary, and that public officials will continue to recognize and utilize valuable treatment modalities offered through instrumentalities like ASAT and A.A. At the same time, we remain legitimately concerned about how they do so in light of the reasoning that leads to the precise holding. For example, if purely voluntary, unconditional participation in an ASAT-A.A. Program satisfies all the Lemon prongs and, thus, would not constitute an Establishment Clause violation in that universe and fact pattern, how *704 and why does the addition of a dominant coercion element transcend and neutralize the satisfaction of the core criteria on establishment grounds? Stated conversely, if coercion of the distinctive kind asserted here is not present, how and why, then, would the same ASAT-A.A. Program, in a purely voluntary regimen, escape the Establishment Clause cloud engendered by the whole of the rationale of this case? The answers to these troublesome queries, for us at least, are elusive, unpersuasive and puzzling.
nil
The Establishment Clause in 10 words declares that "Congress shall make no law respecting an establishment of religion” and is applicable to the States through the Fourteenth Amendment (US Const 1st, 14th Amends; Abington School Dist. v Schempp, 374 US 203, 205, supra). The Supreme Court realistically recognizes that total separation of Religion and State in a pluralistic society with this Nation’s history and traditions is not possible or even desirable.
Towards the preservation and recognition of renowned laudatory ends and multifaceted protections, the Supreme Court has stood by a test to determine whether particular government endorsements or entanglements with religion are prohibited by analyzing "the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority” (Lemon v Kurtzman, 403 US 602, 615, supra). In Lemon, the Supreme Court declared the well-known tripartite test: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion * * *; finally, the statute must not foster 'an excessive governmental entanglement with religion’ ” (id., at 612-613 [citations omitted]).
Individual Justices of the Supreme Court have expressed varying qualms about the continued usefulness and viability of Lemon (see, Allegheny County v Greater Pittsburgh Am. Civ. Liberties Union, 492 US 573, 655, supra [Kennedy, J., concurring in part and dissenting in part]; Edwards v Aguillard, 482 US 578, 636-640 [Scalia, J., dissenting]; Lynch v Donnelly, 465 US 668, 688-689, supra [O’Connor, J., concurring]). The evident unevenness generated by the Lemon approach, as reflected in the Supreme Court’s latest cases, may be rectified someday and, in its place, a less separationist and more communitarian *705 and beneficial approach may emerge (see especially, Witte, The Essential Rights and Liberties of Religion in the American Constitutional Experiment, 71 Notre Dame L Rev 371, 425-430 [1996]; see, e.g., Rosenberger v Rectors & Visitors of Univ. of Va., 515 US —, —, 115 S Ct 2510, 2522-2523; Capitol Sq. Review v Pinette, 515 US —, 115 S Ct 2440; Bowen v Kendrick, 487 US 589). The Supreme Court, however, has for the most part held onto the Lemon set of guideposts for Establishment Clause jurisprudence, analysis and application (see, Lamb’s Chapel v Center Moriches Union Free School Dist., 508 US 384, 395, n 7).
The majority’s overriding emphasis on a coercion prong, however, is disconcerting, especially when applied in this dispositional setting (majority opn, at 680, 686; compare, Zorach v Clauson, 343 US 306, 311-312, supra; Grumet v Board of Educ., 81 NY2d 518, 527, affd 512 US 687; New York State School Bds. Assn. v Sobol, 79 NY2d 333, 339; Matter of Klein [Hartnett], 78 NY2d 662, 666; see also, Witte, op. cit., at 426-427). Indeed, the primary-and-principal-effects prong of Lemon seems to be altered and diluted in a way that may jeopardize other State actions under Lemon (majority opn, at 677, 686; Gedicks, The Rhetoric of Church and State, at 72-73).
All experts, scholars and commentary aside, in any event, the First Amendment and the Supreme Court cases dominate. Petitioner’s core claim thus ought to be meticulously examined to see how it measures up against the existing array of authorities — not petitioner’s theoretical construct. His complaint centrally relies upon the importation into the ASAT Program of assertedly objectionable religious symbols from the A.A. Twelve Step method. That is his lawsuit, not our characterization of it.
Notwithstanding the majority’s objections to our dissenting viewpoint that analyzes the case as it comes to us, coercion— without a linked religious nucleus that emerges as constitutionally offensive — cannot alone justify the reversal in this case. After all, everything this appellant-petitioner prisoner does or does not do is largely governed by the innately coercive atmosphere of his incarceration. He is in a correctional facility. He should not be allowed in the circumstances of this case to wield the Establishment Clause "as a sword to justify repression of religion or its adherents from any aspect of public life” (McDaniel v Paty, 435 US 618, 641; see generally, Carter, The Culture of Disbelief, op. cit.). Yet, petitioner is allowed to do just that when he asserts, and the majority agrees, that the Twelve Steps of A.A. unconstitutionally compel him to partici *706 pate in a collection of content-based, "religious-oriented practices and precepts,” that by permeation into ASAT are together deemed to violate Lemon, solely because he wishes and chooses to apply for privileges permitted under a discretionary expanded visitation regulation.
Petitioner, it should be noted, concedes that ASAT’s overriding purpose to treat and reduce substance abuse among prison inmates is secular and, therefore, satisfies Lemon’s first criterion (see, Boyd v Coughlin, 914 F Supp 828, 832 [ND NY 1996]). Thus, petitioner’s claim, taken in the terms of his own argument, rises or falls under Lemon’s second and third criteria, that is, whether ASAT, through A.A., principally or primarily advances religion or impermissibly entangles government with religion.
Whether the primary effect of a governmental policy advances or inhibits religion, in turn, depends on whether the "challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices” (Grand Rapids School Dist. v Ball, 473 US 373, 390). Mere exposure to religious ideas or pure personal subjectivity do not breach the constitutional "blurred, indistinct, and variable barrier” (Lemon v Kurtzman, 403 US 602, 614, supra), nor do individuals possess constitutional rights and power to force government "to tailor public school programs [or the ASAT curriculum, we would respectfully submit] to individual preferences, including religious [or nonreligious] preferences” (see, Ware v Valley Stream High School Dist., 75 NY2d 114, 125). This is precisely what petitioner succeeds in doing by this case. Indeed, not "every state action impacting religion is invalid if one or a few citizens find it offensive. People may take offense at all manner of religious as well as nonreligious messages, but offense alone does not in every case show a violation” (Lee v Weisman, 505 US 577, 597, supra [emphasis added]).
The only references in the ASAT materials to the actual text of the A.A. Twelve Steps — which we believe do not constitute an unconstitutional State-compelled participation in religious practices — are found in Attachment E to the Operations Manual, entitled "ASAT Program Curriculum.” The implementation and underlying focus of the counseling provided pursuant to these steps, however, is functionally and decidedly nonreligious (so far as we know on this record), no matter what the incorporated deistic references semantically purport to invoke, suggest and portray.
*707 The petitioner objects particularly to the incorporation by reference of A.A. Steps Three, Five, Six, Seven, Eleven and Twelve into the ASAT curriculum, claiming that parts of their text foster or force a theistic point of view upon his agnostic beliefs. Though the majority agrees with petitioner’s argument, we disagree; finer line-drawing is the more progressive and enlightened trend and task (see, Rosenberger v Rectors & Visitors of Univ. of Va., 515 US —, —, 115 S Ct 2510, 2526, supra [O’Connor, J., concurring]). Thus, petitioner’s claims are not supportable in this case and should not be remediable by the constitutionally rooted relief granted here.
The ASAT curriculum states that the goal of Step Three is "[t]o explore the concepts and barriers in accepting a power beyond self’ as well as "[e]xploration of self-centeredness,” and that the group counseling focus is to "explore issues of fear (feelings) and its relationship to chemical use.” Although the list of suggested discussion topics includes "barriers to faith” and "prayer and meditation,” no documentation by the party bearing the heavy burden of proof in such a case is presented that these are anything more than talking points and topics. It cannot be overlooked that, in this group setting, counselors must be prepared to handle inquiries from and concerns of all members of the group, religious and nonreligious alike, and that inhibiting individual inmates from expressing personal views in a secular program may impinge upon their free exercise, free speech and free association rights (see, Rosenberger v Rectors & Visitors of Univ. of Va., supra, 515 US, at —, —, —, 115 S Ct, at 2513, 2520, 2523; Capitol Sq. Review v Pinette, 515 US —, —, 115 S Ct 2440, 2448-2449, supra). In a diverse and pluralistic universe, including a prison environment, a curriculum’s identification of faith and neutrally described feelings of hope, fear, and trust do not dissipate or override the significantly secular quality within the over-all treatment regimen. Nor do they project religiosity. Moreover, spirituality is not synonymous with religion generally or constitutionally, no matter what Webster’s dictionary may acontextually assemble as a general definition (majority opn, at 681).
Steps Eleven and Twelve focus on discussions of the effect of addiction on others and continue to maintain a sense of momentum towards the freedom from dependency developed with the help of the program and its participants. Step Eleven does refer to "prayer and meditation” and "contact with God,” but then identifies the goal as: "[A]ssist[ing] in understanding the relationship between disease and its effects on the next *708 generation” and "viewing parenting in terms of recovery behavior.” Step Twelve refers to a "spiritual awakening,” but rather than having any formalized religious significance or content, the goal of this step is a "[pjersonal exploration of the feelings related to leaving treatment (and prison).” ASAT is, thus, thoroughly free of religious organization, theses, ritual or doctrine, as expressly ordained by its curriculum. The group discussions are cued to family and recovery issues in a therapeutic and nonreligious manner. The talking points accompanying these A.A. Steps do not implicate religious proselytization or preference, except by petitioner’s ingenuously subjective attenuation in this case — and that does not rise to the level of a constitutionally coerced religious entrapment of this petitioner.
In sum, the majority finds that the ASAT "curriculum” suffers from a dominating form of religious coercion and, thus, declares it constitutionally encumbered, sufficiently to justify the final decree of this case. The curriculum focuses principally on assisting inmates on their voyages of self-discovery away from addiction to self-awareness and recovery, and the personal, psychological, social and spiritual means to maintain that state of sobriety or avoidance of dependency once outside the prison walls. Yet, the evidence submitted by petitioner to the courts below to support the constitutional nullification consists principally of the A.A. Twelve Steps sheet distributed as a "suggested handout” to ASAT participating inmates in an attempt to explain non-ASAT self-help group dynamics. Thus, the inordinate constitutional inflation of A.A. texts, pamphlets and personal parables to superimpose an assertedly compulsory religious exertion onto petitioner’s participation in ASAT (the only Program at issue in this lawsuit, in which A.A. is not even a party) is seriously flawed because it is not documented by a customary and requisite as-applied record basis.
Persuasively, other courts have concluded that A.A. practices are not constitutionally religious, although they may partake of a blend of secular and spiritual qualities (see, O’Connor v State of California, 855 F Supp 303; Stafford v Harrison, 766 F Supp 1014, 1016; Feasel v Willis, 904 F Supp 582, 586). The District Court in O’Connor found that it was "undisputed that the primary purpose of requiring attendance at self-help meetings such as A.A. is to prevent drunk driving and the tragic injuries and deaths that result from it, while at the same time providing treatment for individuals with substance abuse problems. The ’principal and primary effect’ of *709 encouraging participation in AA is not to advance religious belief but to treat substance abuse” (O’Connor v State of California, supra, at 307 [emphasis added]).
Similar reasoning was employed in the recent decision of Boyd v Coughlin (914 F Supp 828 [ND NY 1996], supra), which dismissed an inmate’s complaint alleging that the ASAT Program violated both the establishment and free exercise components of the Religious Clause. The court noted that "the expressly stated principal and primary goal of the [ASAT] program is the preparation of chemically dependent inmates for return to the community and to reduce recidivism” (id., at 833). In dismissing the plaintiffs claim, the court "determine[d] that there is no material question of fact as to whether the principal and primary purpose of [ASAT] program is to promote or inhibit religion” (id., at 833).
Petitioner and the majority instead misdirect Warner v Orange County Dept. of Probation (870 F Supp 69). In examining that plaintiffs Establishment Clause claim, the District Court stated that its inquiry was limited to "whether the A.A. program as plaintiff experienced it was essentially religious in nature” (id., at 70 [emphasis added]). It found that the plaintiff had established that "[g]roup prayer was common at the A.A. meetings plaintiff attended” and that "those attending the meetings were strongly encouraged to pray,” and therefore concluded that "the A.A. program that plaintiff experienced placed a heavy emphasis on spirituality and prayer, in both conception and in practice” (id., at 71 [emphasis added]). In finding that the A.A. program as applied in that case had a direct religious essence and particularized experience, the District Court limited its ruling, stating, "the testimony and evidence in this case support the finding that the A.A. meetings plaintiff attended were the functional equivalent of religious exercise” (id., at 72 [emphasis added]). Additionally, Warner expressly declined to apply the Lemon test (id., at 73, n 2). Thus, it is of no value because it avoided the Lemon test and was decided on the unique as-applied facts evidenced in a Federal trial court.
When a "program or regulation has a sufficiently secular effect” and the "secular impact is sufficiently separable” from any conceivable religious impact, no Establishment Clause violation is presented (see, Tribe, op. cit, § 14-10, at 1216). In this case, petitioner has failed even minimally to demonstrate that the primary and principal purpose of the ASAT Program is to compel advancement of constitutionally implicated religious practices or to stifle agnostic or atheistic preferences.
*710 IV.
Petitioner also argues, and the majority accepts, that the petitioner is "compelled” to attend the ASAT Program, and that this by itself shows that the primary purpose and effect of ASAT becomes one of advancement of religious practices that violates Establishment of Religion strictures. This argument and analysis are factually and legally incorrect and inapplicable to this case. First, coercion is not an abstraction and must be particularized. Second, the ASAT Program is initially voluntary and intrinsically discretionary.
This situation is not at all appropriately analogized to school prayer settings (see, infra, part V.). The Supreme Court has stated that "while proof of coercion might provide a basis for a claim under the Free Exercise Clause, it [is] not a necessary element of any claim under the Establishment Clause” (Committee for Pub. Educ. v Nyquist, 413 US 756, 786, supra; see also, Abington School Dist. v Schempp, 374 US 203, 223, supra; Allegheny County v Greater Pittsburgh Am. Civ. Liberties Union, 492 US 573, 597, n 47, supra; Engel v Vitale, 370 US 421, 430; compare, Zorach v Clauson, 343 US 306, 311-312, supra). Indeed, the special circumstances of prison settings prompted the Supreme Court to hold and pointedly observe:
" 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.’ Price v. Johnston, 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives — including deterrence of crime, rehabilitation of prisoners, and institutional security [citations omitted]. * * * '[W]hen a prison regulation impinges on inmates’ constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.’ Turner v. Safley, ante, at 89. This approach ensures the ability of corrections officials 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration,’ ibid., and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to fresolution by decree’” (O’Lone v Estate of Shabazz, 482 US 342, 348-350 [emphasis added]).
*711 Petitioner admitted in his original grievance (before a lawsuit and this appeal ensued) that he was not "being forced to attend the [ASAT] program, but my attendance is required if I intend to continue participation in the FRP program.” Thus, the institutional and constitutional compulsion of which petitioner now complains must be considered within the qualifying criteria for the discretionary expanded visitation program. This crucial constitutional distinction — the prisoner has an initial choice whether to participate at all in the extended visitation program and the prison officials correspondingly have wide discretion to regulate the participants — is disregarded in the resolution of this key aspect of this appeal.
The Family Reunion Program grants some inmates the opportunity to receive selected visitors for extended time periods (7 NYCRR 220.1). Eligibility is dependent on satisfying specified criteria, including a minimum length of stay at a correctional facility and a clean disciplinary record (7 NYCRR 220.2 [a], [b]). A relevant feature in this case is attendance by inmates at therapeutic treatment programs related to their particular offenses or over-all histories (7 NYCRR 220.2 [a] [3] [ii]). Because of appellant’s admitted heroin use, correctional authorities properly invoked this regulation to require his participation in ASAT for treatment of his addiction (see, 7 NYCRR 220.2 [a] [3] [ii]; 220.8).
Appellant’s claim that this requirement legally converts his attendance and participation in the ASAT Program into a compulsory religious exercise, with Establishment Clause implications and consequences, does not withstand scrutiny. He voluntarily chose the course of action that placed his agnosticism and nonbeliefs at risk because he wished to receive something he is not unqualifiedly entitled to from the State. Yet, he wins this lawsuit and the State is charged with compromising his First Amendment Establishment Clause rights.
In Matter of Doe v Coughlin (71 NY2d 48), this Court stated that:
"Given the present regulatory scheme of the Family Reunion Program, [inmates] could have no legitimate expectation that they would be afforded [visits], * * * Although the regulations establish guidelines, the guidelines do not create an entitlement of [visits] because the review system is heavily discretionary and holds out no more than the pos *712 sibility of [visits] * * *. Moreover, even though an inmate has previously been approved and participated in the program, there can be no legitimate expectation of continued participation because the regulations provide that inmates must reapply each time they seek a visit, and each application is subjected to a new discretionary review” (id., at 55-56 [emphasis added]).
This significant precedent from this Court bearing directly on the part of the analysis that the majority self-describes as the dispositive feature of its rationale — coercion—is left entirely unanswered and substantially deflected.
Contrary to petitioner’s present coercion claim, he suffers no subjugation to unconstitutionally offensive religious practices or influences, even if ASAT and A.A. were deemed to harbor proscribed religious attributes in some constitutionally cognizable sense. The correctional officials exercised appropriate regulatory authority over petitioner’s participation in a discretionary visitation program, so long as he also availed himself of a therapeutic program to treat his undeniable substance abuse history that might then earn him the privilege of such extra visitations. This is an appropriate, not "narrow” or "grudging” limitation on petitioner’s expectations and entitlements, because the privilege of special visitations is necessarily circumscribed by the threshold circumstance of his incarceration, the nature of the visitation program and the individualized discretionary assessment (majority opn, at 695; see, Matter of Doe v Coughlin, 71 NY2d, supra, at 58; see also, Matter of Rivera v Smith, 63 NY2d 501, 510; O’Lone v Estate of Shabazz, 482 US 342, 348, supra).
A keen parallel for this aspect of the case may be drawn from Hamilton v Regents (293 US 245). The Supreme Court found no privileges and immunities or due process violations predicated on plaintiffs’ objection on religious and conscientious grounds to a California statute requiring enrollment and completion of a military science and tactics course as a condition to attending the State’s university. Justice Cardozo aptly added his "extra word” to the Court’s holding in his inimitable voice:
"Manifestly a different doctrine would carry us to lengths that have never yet been dreamed of. * * * The right of private judgment has never yet been so exalted above the powers and the compulsion of the *713 agencies of government. One who is a martyr to a principle — which may turn out in the end to be a delusion or an error-does not prove by his martyrdom that he has kept within the law” (id., at 268 [Cardozo, J., concurring] [emphasis added]).
V.
Petitioner also presses that the ASAT Program violates the Establishment Clause in that it is similar to requiring public school students to participate in mandatory prayer. This argument, expressly endorsed by the majority, should be flatly rejected. Initially, it must be noted that the petitioner has never claimed that he was required or even urged as part of the ASAT Program to pray or even privately meditate in some religious mode. Thus, at the outset, the ASAT Program can by no stretch of the argumentative method be analogized to the sectarian prayer setting and activity which the Supreme Court condemned as a "state-sponsored religious exercise” in Lee v Weisman (505 US 577, 592, supra) and Engel v Vitale (370 US 421, 424, supra). The majority’s transference of these two cases concerning formal prayer in public school settings into this case is particularly unpersuasive.
This should be contrasted to Zorach v Clauson (343 US 306, supra), for example, where New York’s released time program was upheld. It allowed pupils to leave their public schools during school hours, but only on condition and for compulsory attendance at religious instruction. The opinion of the Court repelled the Establishment Clause challenge and explicitly rejected the argued "coercion” element as irrelevant. Its analysis is even more pertinent to this case, because neither formal public school prayer nor public financial aid to secular religious schools is implicated here. Those features make the instant case exceptionally different from the authorities so intensely relied on by the majority.
The Supreme Court has stated that "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools. * * * Our decisions * * * recognize, among other things, that prayer exercises in public schools carry a particular risk of indirect coercion. The concern may not be limited to the context of schools, but it is most pronounced there” (Lee v Weisman, supra, at 592 [citations omitted]). In Lee, the Court even drew the ironically apt distinction between imposing religion on children and the choices open to adults, adding *714 that it did "not address whether [the] choice is acceptable if the affected citizens are mature adults, but we think the State may not, consistent with the Establishment Clause, place primary and secondary school children in this position” (id., at 593).
The reasoning that likens a prison environment to a school’s "inherently authoritarian atmosphere” and prisoners to pupils is wrong. Fundamentally, among other considerations, this ignores the maxim that heightened constitutional analysis governs the protected enclave of students in schools, in contradistinction to the differentiated constitutional protections preserved for mature adults in prisons (see, O’Lone v Estate of Shabazz, 482 US 342, 349, supra; see also, Pell v Procunier, 417 US 817).
The ASAT Program finally suffers no excessive entanglement between State and religion under Lemon’s third prong. The assertion of a "delegation of] the State’s discretionary authority” (majority opn, at 690) is factually unsupportable on this record. Also, Board of Educ. of Kiryas Joel Vil. School Dist. v Grumet (512 US 687, supra) is totally inapposite in that regard. Here, the State has by no means authorized some religious sect or its functionaries to carry out a public function. Indeed, the majority’s expectation that A.A. volunteers working in the ASAT Program will "wholeheartedly” engage in proselytization and religious indoctrination (majority opn, at 689) is gratuitous and finds no support in the record or in empirical data.
VI
Many people may believe that A.A. is an entity of spiritual essence or experience. Referenced incorporation of its literature into ASAT to forge a religious alchemy that implicates the Establishment Clause of the First Amendment by some foreboding compulsion feature, however, is not justified or proven. Greater quantum and quality should be required to cross that constitutionally blurred barrier. Indeed, the repeated evocation of a generalized deity figure and symbol or some nondenominational, secular alternative "Higher Power” fails to support this profound absorption of A.A. and ASAT into the territory of a compulsory, constitutionally forbidden religious encounter. We reiterate, in summary, the cogent resolution of this case by the unanimous Appellate Division:
"[I]t is our conclusion that petitioner has failed to *715 make an adequate record to state a claim for an Establishment Clause violation. The petition cites nothing of a religious nature about this particular ASAT program or its practices other than the fact that it is modeled after the principles of AA which make references to 'God’ and a 'Higher Power’. We hold that under the facts and limited record in this case, the inclusion of the 12-step AA component into the ASAT program did not make the program a religious exercise and, therefore, did not violate petitioner’s rights under the Establishment Clause of the 1st Amendment” (211 AD2d 187, 194 [Spain, J.]).
Nevertheless, this case is now concluded by this Court with a torrent of competing words and interpretations of the record, relevant authorities and constitutional analysis. In the end, Judge Ciparick and I agree with the lower courts and disagree with the reversal decree here because ASAT and A.A., in their essences and practices, have not been shown to compel or proselytize a State-imposed religious activity and participation generally or as to petitioner that violate the precepts of the Establishment Clause of the First Amendment of the United States Constitution.
Chief Judge Kaye and Judges Simons, Titone and Smith concur with Judge Levine; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judge Ciparick concurs.
Order reversed, etc.