Ulysses BOYD, Plaintiff,

v.

Thomas A. COUGHLIN, III, James J. Plescia, Corrections Officer, Robert Mitchell, Superintendent of Eastern New York Correctional Facility, Sheryl Butler, Deputy Superintendent for Program Services, Debra R. Joy, Senior Corrections Counselor, Carol Milewski, Family Reunion Program Coordinator, Marilyn Demorest, in Charge of the Prison's Alcohol and Substance Abuse Treatment Program, Robert Posner, Corrections Counselor, Defendants.

No. 93–CV–1385.

United States District Court,
N.D. New York.

Feb. 2, 1996.

Law Office of Robert N. Isseks (Robert N. Isseks, of counsel), Middletown, NY, for plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (Deirdre Roney, Asst. Attorney General, of counsel), Albany, NY, for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This matter was referred to the Hon. Ralph W. Smith, Jr., United States Magistrate Judge, for a report and recommendation pursuant to a Standing Order dated August 2, 1985.

The plaintiff, ULYSSES BOYD, filed a complaint alleging a violation of his First Amendment rights, under 42 U.S.C. § 1983. The defendants moved for summary judgment, and the Magistrate Judge has recommended dismissal of the plaintiff's complaint. This court agrees with the Magistrate Judge's recommendation, but for different reasons.

The plaintiff is an inmate in the Eastern Correctional Facility ("Eastern"), a New York State prison. The plaintiff was removed from participation in the Family Re-

union Program ("FRP") [1] at Eastern because of his refusal to participate in the facility's alcohol and substance abuse program ("program"), which requires attendance at Alcoholics Anonymous ("AA") or Narcotics Anonymous ("NA") meetings, as required for prisoners with substance abuse histories before being permitted to participate in the FRP. The plaintiff alleges, in essence, two claims: (1) that the defendants, through the program, violate the Establishment Clause of the First Amendment to the United States Constitution by conditioning the plaintiff's participation in the FRP on his learning, knowing, believing, and/or working with the "Twelve Steps of Alcoholics Anonymous," an allegedly religious program, and by failing to provide a secular alternative treatment; and (2) that the defendants, through the program, violate the Free Exercise Clause of the First Amendment to the United States Constitution by forcing the plaintiff, an alleged Muslim, to participate in a religious program that is offensive to and incompatible with his religious faith.

The defendants have moved for summary judgment, seeking dismissal of the plaintiff's complaint. The defendants contend that (1) the program does not violate the Establishment Clause because the program meets the test set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); (2) the program does not violate the Free Exercise Clause because the plaintiff is not being compelled to affirm or disavow a tenet of his religious beliefs; (3) that even if the plaintiff's First Amendment rights are impinged, such impingement is constitutionally permissible; and (4) that the defendants are qualifiedly immune from suit.

### II. DISCUSSION

#### A. Standard Of Review

■ These motions were referred to Magistrate Judge Smith, Jr. for a report and recommendation and objections have been filed. Accordingly, pursuant to Fed.R.Civ.P. 72 this court must "make a *de novo* determination upon the record" of the motions be-

1. A program which the plaintiff had previously been permitted to participate in at another insti-

tution, but which required annual reapplication.

fore the court. Fed.R.Civ.P. 72(b). After making a de novo determination, this court may "accept, reject, or modify the recommended decision receive further evidence, or recommit the matter to the magistrate with instructions." *Id.*

## B. Standard For Summary Judgment

■ The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & H.R. Co. v. Conrail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (*quoting, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 516 (2d Cir.1994) (*quoting,* 10A C. Wright & A. Miller, Federal Practice and Procedure: Civil s 2721 at 40 (2d ed. 1983)). However, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it may not properly grant summary judgment where the issue turns on the credibility of witnesses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Azrielli,* 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the Court on summary judgment. *Id.; See, e.g.,* Fed. R.Civ.P. 56(e), 1963 Advisory Committee Note; *Agosto v. Immigration & Naturalization Service,* 436 U.S. 748, 756, 98 S.Ct. 2081, 2086, 56 L.Ed.2d 677 (1978); *Poller v. Columbia Broadcasting System,* 368 U.S. 464,

472–73, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Centronics Financial Corp. v. El Conquistador Hotel Corp.,* 573 F.2d 779, 782 (2d Cir.1978); 6 Moore's Federal Practice P 56.02 at 56–45 (2d ed. 1993). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). It is with the foregoing standards in mind that the Court turns to the issues presented.

## C. Alleged Violation Of The Establishment Clause

■ The Establishment Clause germinated from "the lesson of history ... that in the hands of government what might begin as tolerant expression of religious views may end in a policy to indoctrinate and coerce." *Lee v. Weisman,* 505 U.S. 577, 591–92, 112 S.Ct. 2649, 2657–58, 120 L.Ed.2d 467 (1992). However, courts must remain cognizant that not "every state action implicating religion is invalid if one or a few citizens find it offensive." *Id,* at 598, 112 S.Ct. at 2661. Moreover, "[a] relentless and all-pervasive attempt to exclude religion from every aspect of public life could itself become inconsistent with the Constitution." *Id.*

■ The general test for determining if a statute or practice violates the Establishment Clause is an examination of (1) whether it has a secular purpose; (2) whether it advances or inhibits religion in its *principal or primary* effect; and (3) whether it fosters excessive entanglement between the state and religion. *See County of Allegheny v. Amer. Civil Liberties Union,* 492 U.S. 573, 592, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989) (*citing, Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971)). However, this test is tempered somewhat by the context of this case—an inmate challenging a Department of Corrections directive. As stated by the Supreme Court, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legiti-

mate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); *see generally, Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Thus, the court first must determine if the required participation in the alcohol and substance abuse treatment program meets the *Lemon* test. If it meets the test, there is no violation of the Establishment Clause. However, if the required participation, or more particularly, the program itself, fails the *Lemon* test, the court must consider whether there is a question of fact as to whether the program is reasonably related to legitimate penological interests.

### i. Secular Purpose

The first branch of the *Lemon* test, whether the program has a secular purpose, is conceded by the plaintiff. *See Lemon,* 403 U.S. at 612, 91 S.Ct. at 2111. It cannot seriously be contended that the alcohol and substance abuse treatment program in place in New York's prison system does not have a secular purpose. The program serves to treat inmates with alcohol and chemical dependency problems, thereby reducing reincarceration rates, and helping to reduce the scope and effects of a serious social problem.

### ii. Principal Or Primary Purpose

 The second branch of the *Lemon* test is whether the program, as its principal or primary purpose, advances or inhibits religion. *Id.* The Supreme Court has explained that to violate this prong, the challenged governmental action must have "the *direct and immediate effect* of advancing religion." *Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 784 n. 39, 93 S.Ct. 2955, 2971 n. 39, 37 L.Ed.2d 948 (1973) (emphasis added); *see also, McCreary v. Stone,* 739 F.2d 716, 726 (2d Cir.1984), *aff'd,* 471 U.S. 83, 105 S.Ct. 1859, 85 L.Ed.2d 63 (1985). When considering this prong, "the context in which [the allegedly infringing conduct occurs] is relevant for determining the answer." *County of Allegheny,* 492 U.S. at 597, 109 S.Ct. at 3103 (stated in the context of a challenge to a local government's display of a creche). In addition, the court must determine "whether 'the challenged governmental action is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents, as a disapproval, of their individual religious choices.' " *Id.,* at 597, 109 S.Ct. at 3103 (*quoting, School Dist. of Grand Rapids v. Ball,* 473 U.S. 373, 390, 105 S.Ct. 3216, 3226, 87 L.Ed.2d 267 (1985)). Accordingly, when distilled to some manageable articulation, the court must determine whether the challenged governmental conduct, when viewed in context, is likely to be perceived as having as its principal or primary purpose the endorsement or disapproval of religion.

The context within which the court conducts its inquiry is first, and foremost, a prison/inmate setting. Furthermore, the court is cognizant of the importance of alcohol and substance abuse treatment programs within the prison setting, both as a benefit to the inmate, as a benefit to prison security, and as a benefit to society in terms of security, productivity, and reduced recidivism.

The court notes at the outset, that the plaintiff does not allege any particular personally held belief or practice that is offended by the program generally, or the AA or NA programs, in particular. Instead, the plaintiff recites language in the Twelve Steps literature that refers to "Higher Power", and relies heavily on a district court decision in this Circuit, *Warner v. Orange County Dept. of Probation,* 827 F.Supp. 261 (S.D.N.Y. 1993), for the assertion that AA relies on "religious indoctrination" and "arguably has a primary effect of advancing religion." *Warner,* 827 F.Supp. at 266. *Warner,* however, is distinguishable from the instant case.

In *Warner,* an individual convicted of driving while intoxicated was compelled as a condition of his probation to attend AA meetings. Importantly, the plaintiff was not incarcerated, as is the plaintiff herein, the plaintiff was obligated to attend AA meetings or face possible incarceration, and there was no evidence that the plaintiff, in fact, was an alcoholic. Moreover, the *Warner* court went to great lengths to make very clear that the holding in *Warner* may be limited to the "specific facts" of that case, given the variations in the conduct of the numerous independent AA chapters. In the context of

deciding a motion to dismiss, the *Warner* court determined that the plaintiff had alleged a viable claim. In the instant case, the sufficiency of the complaint is not at issue. Finally, the *Warner* court specifically noted that allegations by a prison inmate of impingement of First Amendment rights would present a very different situation for the court.

In the instant case, the court notes that the plaintiff is an inmate, has a demonstrated problem with alcohol, and is not obligated to attend the alcohol and substance abuse treatment program. The alcohol and substance abuse treatment program is merely a prerequisite to the plaintiff's participation in the voluntary FRP. Moreover, the AA literature, although making numerous references to a "God" or "higher power" as the individual participant may understand such a power, unequivocally states that the references do not reflect any concept of organized religion, but rather, reflect a belief that some form of spirituality is necessary to recovery.

■ This court is unaware of a controlling decision that equates spirituality with religion, such that any reference to spirituality in AA, which is only one part of the alcohol and substance abuse treatment program in New York's prison system, runs afoul of the First Amendment. Moreover, the expressly stated principal and primary goal of the alcohol and substance abuse treatment program is the preparation of chemically dependent inmates for return to the community and to reduce recidivism.[2] Participation in self-help groups designed to model AA, the most successful and widely available alcohol and substance abuse treatment program in the nation, is only one vehicle for achieving the program's goals. The mere reference to spirituality, or the use of terms that may be commonly associated with religion, without more, cannot change the character of AA or NA, much less the program, from that of aiming to treat chemically dependent individuals to that of advancing or inhibiting religion as a principal or primary purpose.

Based on the foregoing, the court determines that there is no material question of fact as to the whether the principal and primary purpose of the alcohol and substance abuse treatment program is to promote or inhibit religion.

### iii. Excessive Entanglement

■ The third branch of the *Lemon* test is whether the challenged governmental conduct excessively entangles government with religion. *Lemon,* 403 U.S. at 612, 91 S.Ct. at 2111. The plaintiff again relies on *Warner.* In *Warner,* the court, with at best cursory analysis, stated that "[s]ince the state court directed Plaintiff's participation, it could be viewed as excessive government entanglement with religion." 827 F.Supp. at 266.

In the instant case, as set forth above, the plaintiff is *not* compelled to participate in the alcohol and substance abuse treatment program, notwithstanding the fact that it is required if he wishes to participate in the optional FRP. Moreover, the state, in the person of the Department of Corrections does not regulate or control the conduct complained of herein, i.e., the conduct of self-help groups modeled after AA and NA. Thus, the program, viewed in context, is quite different from *Warner.* Accordingly, the plaintiff has failed to raise a material factual issue as to excessive entanglement.

### D. Alleged Violation Of The Free Exercise Clause

The plaintiff essentially argues that his "forced" participation in the alcohol and substance abuse treatment program compels religious practice repugnant to his views and belief, in violation of the Free Exercise Clause of the United States Constitution. The court first reiterates that the plaintiff is not being forced to participate in the alcohol and substance abuse treatment program. The plaintiff has been denied acceptance to the FRP because he refuses to comply with a prerequisite to participation, to wit, adherence to the alcohol and substance abuse treatment program. On that basis alone, the

---

**2.** *See* Alcohol And Substance Abuse Treatment Program Operations Manual Mission Statement, III, A (referencing treatment including edu- cation, counseling, and self-help groups based on the "Twelve Step" approach).

court can grant the defendants' motion, however, the court will examine the merits of a Free Exercise claim.

■ The Free Exercise Clause prohibits "governmental compulsion either to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion." *Mozert v. Hawkins County Brd. of Educ.*, 827 F.2d 1058, 1066 (2d Cir. 1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988). Simply stated, the plaintiff has failed to set forth one belief or practice forbidden or required by his religion, much less one that is affected adversely by governmental compulsion. Moreover, the court has already held that there is no material factual issue as to the *Lemon* test factors. Accordingly, the plaintiff has raised no factual issue which would preclude summary judgment as to the advancement or inhibition of religion by the government through its prison alcohol and substance abuse treatment program.

### E. *Turner–O'Lone* Factor Analysis

■ The Supreme Court, in deference to "the complexities of prison administration," [3] has set forth a multi factored analysis to determine when governmental impingement of an inmates constitutional rights is permissible. *See Turner v. Safley*, 482 U.S. 78, 89–90, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349–50, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987). "The *Turner* Court determined that the factors to be considered are: 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest." *Benjamin, supra in n. 3* (citing, *Turner*, 482 U.S. at 89–90, 107 S.Ct. at 2261–62.

■ It is clear to the court that a rational relationship exists between the required participation in the alcohol and substance abuse treatment program (the regulation) and the governmental interests in reducing drug dependency of inmates, reducing recidivism, providing treatment with the best chance for success inside and outside the prison system, and increasing security. According to the affidavits in support of the defendants' motion, and given the omission of references in the plaintiff's affidavits, there are no ready alternatives available to the defendants. Moreover, the creation of an alternative program would affect the prison system greatly in terms of financial and administrative costs that the defendants allege are unreasonable. Accordingly, assuming *arguendo* that the defendants have impinged the plaintiff's First Amendment rights, pursuant to the *Turner–O'Lone* standards, such impingement is arguably permissible.

### F. Qualified Immunity

Given the foregoing discussion, the court need not address the issue of qualified immunity at this time.

### III. CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment, and dismisses the plaintiff's complaint.

**IT IS SO ORDERED.**

---

3. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990); *see also, Pell v. Procuni-* er, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974).