**John WARBURTON, 94–B–1581 Plaintiff,**

v.

**Roxanne UNDERWOOD, Inmate Records Coordinator Groveland Correctional Facility; M.E. Jones, Correction Counselor, individually as inmate assistant; Debbie Zeh, Committee Member, Individually; Deputy Superintendent Perkins, Committee Member, Individually; Timothy Murray, Superintendent, Individually, Affirming Determination; Glenn S. Goord, Commissioner of Corrections, Individually, Affirming Determination; and Donald Selsky, Commissioner's Designee, Individually, Affirming Determination; Defendants.**

No. 97–CV–0988F.

United States District Court, W.D. New York.

March 20, 1998.

John Warburton, Sonyea, NY, pro se.

## DECISION AND ORDER

SIRAGUSA, District Judge.

### INTRODUCTION

Plaintiff John Warburton, an inmate of the Groveland Correctional Facility, has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket # 1) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket # 2). Plaintiff has also filed an amended complaint (Docket # 3) and a motion for default judgment (Docket # 4). Plaintiff claims that the defendants, Inmate Records Coordinator Roxanne Underwood, Correction Counselor M.E. Jones, Debbie Zeh, Superintendent Timothy Murray, Deputy Superintendent Perkins, of the Groveland Correctional Facility, and Commissioner Glenn S. Goord and Donald Selsky, of the New York State Department of Correctional Services (DOCS), have violated his constitutional rights by denying him access to the courts and in the conduct and result of a Time Allowance Committee Hearing. For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, a number of plaintiff's claims are dismissed pursuant to 28 U.S.C. § 1915, plaintiff's request for entry of default judgment is denied, and service is directed with respect to the remaining claim.

### FACTS

Plaintiff alleges in his original complaint, filed December 16, 1997, that on November 24, 1997, defendant Underwood served him court papers one day before the scheduled court date, after she allegedly had held them for nearly two weeks, thereby allegedly violating his constitutional right of access to the courts.

In his amended complaint filed January 30, 1998, plaintiff alleges that on January 16, 1998, defendant Underwood scheduled a Time Allowance Hearing in retaliation for his filing grievances and the complaint in this action against her. On January 20, 1998, defendant M.E. Jones allegedly failed to perform her duty as his inmate counselor in that she was "evasive in answering Plaintiff's Questions," refused to tell him why the hearing had been convened, and refused to obtain "certain relevant documents relating to Plaintiff Defense," allegedly in retaliation for plaintiff's grievances and lawsuit. Amended Complaint, ¶ Four.

Plaintiff claims that on January 21, 1998 he was transported to the main facility of Groveland Correctional Facility, apparently to attend a court-ordered deposition in another case. Plaintiff told the officers who were transporting him that he had filed an appeal of the order, which he claims had the effect of staying the deposition. The officers nevertheless took him to the deposition, telling him that if they are told to take him somewhere, they must take him, and that if he refuses to go, he will be charged with a Tier III offense. According to plaintiff, the officers, whom plaintiff has not named as defendants, were under the supervision of defendant Murray, who was not physically present during the transportation.

Defendant Underwood allegedly came to the room in which the deposition was being held and introduced herself to several of the people present. She allegedly had no reason to be there other than to "inflame plaintiff" and in retaliation for his filing of the grievances and complaint. Amended Complaint, ¶ Six.

Plaintiff's Time Allowance Committee ("TAC") hearing, convened on January 22, 1998, was "attended" by people plaintiff claims are his legal adversaries in state and federal Court proceedings, thereby allegedly depriving him of his right to a fair and impartial hearing. Amended Complaint, ¶ Seven. Plaintiff also alleges that defendants Underwood, Zeh and Perkins conspired to deprive him of due process by refusing to record the hearing and refusing to permit him to enter evidence in his defense, in retaliation for his filing of grievances and lawsuits.

Plaintiff also alleges that defendants Underwood, Zeh, Perkins and a defendant in

another of his lawsuits, identified only as Wenderlich, conspired to violate his right to be free of religion and to coerce and extort him by withholding his earned time allowance from him and utilizing tax monies to force religion on him by directing him to participate in the Narcotics Anonymous program as a condition of the restoration of some of his good time. He further alleges that these acts were done in retaliation for his having filed grievances and lawsuits.[1]

The TAC determination was subsequently upheld, first by defendant Murray and then by defendant Selsky acting on behalf of defendant Goord, allegedly in conspiracy with all the other defendants and in violation of plaintiff's constitutional rights.

Plaintiff seeks $3,000,000 in damages for each of the claims against the defendants; plaintiff also seeks release from custody.

### DISCUSSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action. Therefore, plaintiff is granted permission to proceed *in forma pauperis.*

Section 1915 mandates that when the court grants *in forma pauperis* status, it also must conduct an initial screening of the action to ensure that it goes forward only if it meets certain qualifications. A review of plaintiff's complaint demonstrates that most of plaintiff's claims are based on indisputably baseless legal theories and thus these claims are subject to dismissal under 28 U.S.C. § 1915(e). *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff must allege: (1) that the challenged conduct was attributable at least in part to a person acting under color of state law; and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

As an initial matter, the Court notes that plaintiff did not grieve the issues raised in the original complaint, and it appears that he may well have not grieved the claims against the defendants in his amended complaint either. Although plaintiff states that he did not grieve his claim against defendant Underwood in the original complaint because it is not grievable, 42 U.S.C. § 1997e in fact requires that administrative remedies must be exhausted with respect to all actions brought by a prisoner regarding prison conditions.[2] Thus, because plaintiff failed to exhaust his administrative remedies, the claim against defendant Underwood that she denied plaintiff access to the courts is subject to dismissal pursuant to § 1997e(a). As for his allegations in the amended complaint, the only allegation that plaintiff appears to have exhausted is the determination of the Time Allowance Committee. Accordingly, all of plaintiff's claims except for the determination of the Time Allowance Committee are also subject to dismissal for plaintiff's failure to exhaust his administrative remedies before bringing this action.

The Court does not rely upon § 1997e(a), however, because the claims are also subject to dismissal for substantive reasons under § 1997e(c), which provides that

---

1. Plaintiff notes that he has brought a state court action (Supreme Court, Albany County, Index Number 6419–97) concerning his religious rights.

2. The term "prison conditions" is not defined in 42 U.S.C. § 1997e, but Congress, when it passed the 1996 Prison Litigation Reform Act ("PLRA") which amended § 1997e to require exhaustion as a requirement before a case may be accepted for filing, did define the term "civil action with respect to prison conditions" in its amendments to 18 U.S.C. § 3626, which deals with "[a]ppropri-

ate remedies with respect to prison conditions." According to § 3626(g)(2) as amended by the PLRA,

> the term 'civil action with respect to prison conditions' means **any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison,** but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2) (emphasis added).

[i]n the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying action without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c).

## THE ORIGINAL COMPLAINT

■ Plaintiff claims that defendant Underwood did not serve him with court papers until the day before the court date. While it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the mere delay in serving some court documents does not state a constitutional claim. " '[T]he Constitution requires no more than reasonable access to the courts.' " *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995), *quoting Pickett v. Schaefer,* 503 F.Supp. 27, 28 (S.D.N.Y.1980). Moreover, in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm, that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1995). *Accord Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987).

■ Thus, plaintiff must show that he has suffered an actual injury traceable to the challenged conduct of prison officials—that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis,* 518 U.S. 343, 116 S.Ct. 2174, 2179, 2181, 135 L.Ed.2d 606. Taking plaintiff's claim as true, he nevertheless "offers no facts to explain how a fourteen day delay in service prejudiced [plaintiff's] ability to seek redress from the judicial system." *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995). Accordingly, plaintiff's claim that he has been denied access to the courts by defendant Underwood is hereby dismissed with prejudice.

## THE AMENDED COMPLAINT

### The January 21, 1998 Deposition Claim

■■ Plaintiff's allegation that defendant Underwood violated his constitutional rights by appearing at his January 21, 1998 deposition and introducing herself to others at the deposition "with a direct intent to inflame Plaintiff," Amended Complaint, ¶ Six, also fails to state a claim. Although plaintiff does not state the basis for his claim that this conduct violates his constitutional rights, giving plaintiff's complaint a liberal interpretation, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court construes this as a claim that plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment. A prison official violates the Eighth Amendment prohibition against "cruel and unusual punishment 'when two requirements are met.' " *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997). First, the alleged punishment must be found to be " 'objectively, sufficiently serious.' " *Id.,* quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). " 'Under the objective standard, conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.' " *Boddie, supra,* quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "Second, the prison official involved must have a 'sufficiently culpable state of mind.' " *Boddie, supra,* quoting *Farmer, supra.* Plaintiff has failed to meet either prong of this test here; the fact that he became "inflamed" by the presence of the defendant fails to demonstrate that her presence was objectively serious. In addition, plaintiff's conclusory allegation regarding defendant Underwood's alleged intent in stopping by the deposition, especially taken in conjunction with his description of what Underwood did when she was there (she merely introduced herself to two people), fails to demonstrate the requisite culpable state of mind.

■ The Court also construes this claim as asserting a violation of plaintiff's right to privacy, in that plaintiff alleges that defendant Underwood had no legitimate reason for appearing at his deposition. However, the courts have continually held that prison-

ers have only limited rights to privacy. *See e.g. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (upholding constitutionality of double-bunking and body cavity searches); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (prisoners have no reasonable expectations of privacy in their cell). Given that plaintiff has alleged only that the defendant introduced herself to several people, but not that she in some way may have made herself privy to confidential and privileged information, plaintiff has failed to state a claim.

### The Retaliation Allegation

■ However, the Court notes that plaintiff alleges that defendant Underwood appeared at his deposition in retaliation for his prior grievances and lawsuits. Where an inmate alleges that prison officials acted in retaliation for his having exercised a substantive due process right, such as the right to petition for redress of grievances, actions which would otherwise not rise to the level of a constitutional violation have been found to deny the inmate his constitutional right of access to higher authorities, including the courts.

■ Thus, the plaintiff's claim that the defendant's action was an attempt to retaliate against him requires this Court to re-examine his claim. However, the mere allegation that defendant Underwood acted out of retaliatory motives is not sufficient to elevate plaintiff's claims to the level of constitutional violations. The United States Court of Appeals for the Second Circuit so held in *Flaherty v. Coughlin*, 713 F.2d 10 (1983).

> We agree ... that claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes. If full discovery were to be permitted on every such claim, the result would indeed be chaotic. However, some of these claims may have merit and, where that is the case, the prisoners making them must be accorded the procedural and substantive rights available to other litigants.

The exact process to be followed will vary according to the circumstances of each case and district courts must exercise their sound discretion in determining the nature and amount of discovery to be allowed. The goal, however, is the same in each case: to sift out those claims where further discovery may possibly yield evidence in support of the prisoner's allegations from those where it is, or becomes, evident that no factual basis exists.

> For example, a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case ought usually be pursued with full discovery. However, a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. In such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants. A third category of allegations also exists, namely a complaint which alleges facts giving rise to a colorable suspicion of retaliation. Such a claim will support at least documentary discovery.

*Id.* at 13.

Here plaintiff has merely stated in a conclusory manner that the appearance of defendant Underwood at the deposition room, an act which in itself is clearly constitutional, was done as retaliation for his grievances and lawsuits. This claim, which is insufficient to support a constitutionally significant claim of retaliation, is hereby dismissed with prejudice.

### The Time Allowance Committee Hearing Claims

Plaintiff alleges that the TAC hearing was convened without sufficient cause, and that his constitutional rights were violated by the attendance of a number of people he claims are defendants in other actions he has initiated. Plaintiff states that the TAC determination was upheld upon appeal; he does not, however, indicate that he further attacked the TAC determination by bringing a state court Article 78 action or through a state or

federal habeas proceeding.[3] Thus plaintiff's allegations make clear that the TAC determination has not been reversed. expunged, or otherwise invalidated by another tribunal, nor has it been called into question by the issuance of a writ of habeas corpus in federal court.

 Clearly, plaintiff's claims herein regarding the conduct of the Time Allowance Committee, both with respect to why the hearing was convened and how the hearing was conducted, are essentially claims that his good time credits have been wrongly withheld as a result of the TAC determination and that his continued confinement as a result of that determination is wrongful.[4] Plaintiff may not challenge a loss of good time credits in a § 1983 action, however; he must do so instead in the context of a habeas corpus proceeding. *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In addition, *Preiser* requires as a general rule that in this type of case a plaintiff must have exhausted available state remedies before the federal habeas action is commenced. *Preiser,* 411 U.S. at 500; *see also Ellman v. Davis,* 42 F.3d 144, 148–49 (2d Cir.1994) (holding that a prisoner's failure to pursue an appeal in state Court is a procedural bar to federal habeas relief unless the petitioner shows "both cause for failing to bring the [state] claim ... and actual prejudice from the failure to consider his federal claims"), *cert. denied* 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995).

 In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court considered a § 1983 action in which a prisoner sought money damages for unconstitutional acts that led to his arrest and conviction. There, the Supreme Court held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it

would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck,* 512 U.S. at 487. *Heck* thus requires, as an element of the § 1983 claim, that the plaintiff demonstrate that his sentence or conviction has been reversed, expunged, or otherwise invalidated by another tribunal, or, that it has been "called into question" by the issuance of a writ of habeas corpus in federal court. *Id.* at 484–87.

Recently, in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court applied the reasoning set forth in *Heck* to a § 1983 case in which the underlying proceeding was a prison administrative hearing that resulted in the plaintiff's loss of good time credits. *Edwards,* 117 S.Ct. at 1584. *Edwards* held that an allegation of procedural defects in a prison disciplinary hearing does "imply the invalidity of the punishment," and as such, a § 1983 lawsuit cannot proceed without a finding from another forum that the underlying proceeding and punishment were invalid. *Id.* 117 S.Ct. at 1588; *see also Clarke v. Stalder,* 121 F.3d 222, 226 (5th Cir.1997); *Burnell v. Coughlin,* 975 F.Supp. 473, 477 (W.D.N.Y. 1997) (holding that the proper procedures for challenging the results of a prison disciplinary hearing are "appeal, administrative review, collateral attack, or habeas corpus").

 Therefore plaintiff's § 1983 action regarding the TAC determination must be dismissed because he has not met the requirements that apply in cases such as his, where a prisoner plaintiff is seeking to recover monetary relief and release from custody for suffering the loss of good time credits. Specifically, the relief sought here, concerning the Time Allowance Committee's decision to remove his good time credits, is not available through a § 1983 suit until he has obtained a finding in another forum that the removal of good time was invalid. *Edwards,* 117 S.Ct. at 1588. Plaintiff has not obtained

---

3. Plaintiff did state that he filed a state action regarding his religion claim, as noted above in footnote 1, but it is not clear whether this action is an Article 78 or a state habeas proceeding.

4. In fact, plaintiff is seeking both money damages and release from prison as relief in this § 1983 action.

such a finding, and his § 1983 claims cannot go forward without it.

### The TAC Retaliation Claim

 Plaintiff also claims that the TAC hearing was convened pursuant to a conspiracy and in retaliation for his litigation activities. However, as discussed above, the mere claim of a retaliatory motive is not sufficient to state a cognizable constitutional claim, *Flaherty v. Coughlin,* 713 F.2d 10 (1983), particularly where the improper convening of a TAC hearing, if it were shown, would amount only to a violation of a regulation, an act in which plaintiff has no due process interest. *Buckley v. Barlow,* 997 F.2d 494 (8th Cir.1993); *D'Amato v. U.S. Parole Commission,* 837 F.2d 72 (2d Cir.1988); *LaBoy v. Coughlin,* 822 F.2d 3 (2d Cir.1987). Plaintiff's conspiracy and retaliation claim regarding the TAC hearing is hereby dismissed with prejudice.

### The Claim Against Defendant Murray

██ Plaintiff's claim against defendant Murray that he was wrongfully transported to a deposition by non-defendant officers who were under defendant Murray's supervision must also be dismissed. Because Murray was not present during the transportation, it appears that plaintiff has named Murray simply because of his supervisory position over the transporting officers.

 Plaintiff may not rely on the doctrine of *respondeat superior* to establish liability in a § 1983 action. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, a showing of some personal responsibility on the part of an employer is required. In the case of an individual defendant, plaintiff must show that the defendant was personally involved in a constitutional deprivation, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), or that the defendant, employed in a position of control, had actual or constructive notice of a constitutional deprivation which he did not act to terminate, *McCann v. Coughlin,* 698 F.2d 112, 125 (2d Cir.1983); *Arroyo v. Schaefer,* 548 F.2d 47 (2d Cir.1977). Even were plaintiff able to show that this incident violated some constitutional right, he has failed to show that Murray was personally responsible. Accordingly, the claim against Murray regarding the transportation of the plaintiff is hereby dismissed with prejudice.

### The Religion Claim

Plaintiff alleges that defendants Underwood, Zeh, Perkins and a defendant in another of his lawsuits conspired to violate his right to be free of religion by withholding his earned time allowance from him unless he participated in the Narcotics Anonymous program ("N.A."), in retaliation for his litigation activities. Affording plaintiff's complaint the liberal reading due pleadings filed by *pro se* litigants, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court views plaintiff's claims that religion is being forced on him and that public monies are being used to fund religious programming as alleging a violation of plaintiff's rights under the Establishment Clause of the First Amendment.

██ As an initial matter, the Court recognizes that some highly significant constitutional claims, such as those addressing an inmate's rights under the Establishment Clause, may not strictly comply with the requirements of 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." However, the Court finds that such claims nevertheless deserve to be heard, and thus the Court declines to dismiss the Establishment Clause claim under 42 U.S.C. § 1997e(e) despite the fact that the only injury plaintiff could experience as a result of a constitutional violation under the Establishment Clause would be mental or emotional.

 In order to determine whether or not a practice violates the Establishment Clause, the Court must examine whether the practice (1) has a secular purpose; (2) whether it advances or inhibits religion in its principal or primary effect; and (3) whether it

fosters excessive entanglement between the state and religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2135, 29 L.Ed.2d 745 (1971), *reh'g denied*, 404 U.S. 876, 92 S.Ct. 24, 30 L.Ed.2d 123 (1971). Moreover, because plaintiff is a prisoner challenging a Department of Corrections directive, the *Lemon* test is tempered by the test laid out by the Supreme Court in *Turner v. Safley*, which found that a prison regulation that impinges on an inmate's constitutional rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

The Court has found only two district Court cases in this circuit which directly address this issue, and they do not agree in their analysis. In addition, the Court has found one Second Circuit case which defines the Circuit's position on the topic, and which should (but may not, due to its odd procedural posture) be viewed as binding authority.

In *Warner v. Orange County Department of Probation*, 870 F.Supp. 69 (S.D.N.Y. 1994), the Southern District of New York found after a bench trial that compelling a motorist to attend Alcoholics Anonymous ("A.A.") meetings as a condition of his probation violated the Establishment Clause. In so holding, the Court specifically found that (a) attendance at the A.A. meetings was compulsory since the motorist faced incarceration if he refused, (b) the A.A. meetings were the functional equivalent of a religious exercise, given the central theme of God and a higher power in the A.A. literature, and (c) compelling attendance tended to establish a state religious faith.

The *Warner* Court scrutinized the A.A. literature and was persuaded by the fact that the Twelve Steps program, which is the fundamental statement of A.A. and which describe the required procedure to be followed by all attendees, is centered on a concept of a "higher power." In fact, all but five of the twelve steps refer specifically to "God," either directly (Steps 3, 5, 6 and 11) or as a "Power" (Step 2), "Him" (Step 7) or as a "spiritual awakening" (Step 12). The Court also found that the A.A. focus on religious faith, spirituality and prayer was also demonstrated by its other writings, including the basic text of A.A. (commonly referred to as the "Big Book") and the "Serenity Prayer" used to start many of the meetings (all of which closed with the Lord's Prayer).

As a result of its analysis of the writings, basic tenets and meeting structure of A.A., *Warner* found that the A.A. program "placed a heavy emphasis on spirituality and prayer, in both conception and in practice." *Id.* at 71. It also determined that this meant that the A.A. meetings were the functional equivalent of religious exercise. Therefore, *Warner* found that the requirement that plaintiff attend the meeting (or face incarceration) ran afoul of the United States Supreme Court's determination that "the Establishment Clause means at a minimum that 'government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which " 'establishes a [state] religion or religious faith, or tends to do so.' " ' " *Id.* at 72, *quoting Lynch v. Donnelly*, 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604 (1984) (internal citations omitted). *Warner* thus held that "the defendant violated the Establishment Clause by coercing the plaintiff to participate in religious exercise, an act which tends towards the establishment of a state religious faith." *Warner*, 870 F.Supp. at 73.[5]

The *Warner* defendant appealed the district court decision, and on September 9, 1996, the Court of Appeals affirmed (with

5. *Boyd v. Coughlin*, 914 F.Supp. 828 (N.D.N.Y. 1996), disagreed with this determination, holding that requiring a prisoner to attend A.A. or N.A. as a condition of participation in the Family Reunion Program did not violate the Establishment Clause. In so holding, *Boyd* found that, although A.A. literature "mak[es] numerous references to a 'God' or 'higher power' as the individual participant may understand such a power, [the literature] unequivocally states that the references do not reflect any concept of organized religion, but rather reflect a belief that some form of spirituality is necessary to recovery." *Boyd*, 914 F.Supp. at 832–33. *Boyd* also focused on the secular purpose of the substance abuse programs in the New York prison system, emphasizing that the principal or primary purpose of A.A. or N.A. is to treat chemically dependent individuals, not to advance or inhibit religion, and pointed out that the Department of Corrections neither controls nor regulates the conduct of self-help groups modeled after A.A. or N.A. *Id.* at 833.

one dissent) in *Warner v. Orange County Department of Probation*, 115 F.3d 1068 (1996). In strongly affirming the lower Court's finding that requiring a plaintiff to attend A.A. violated the Establishment Clause, the Second Circuit quoted the same statement from the United States Supreme Court's decision in *Lynch* on which the district court had focused regarding the relationship between coerced participation and establishment of religion (quoted in the above paragraph). The Second Circuit found "a substantial religious component" to A.A. and the Twelve Steps on which it (and N.A.) are based. 115 F.3d at 1075. The decision also focused on the elements of coercion and the lack of a non-religious alternative, *id.*, and took note of a recent New York State Court of Appeals decision, *Griffin v. Coughlin*, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996), *cert. denied* —— U.S. ——, 117 S.Ct. 681, 136 L.Ed.2d 607 (1997) (discussed in detail below), which held that coercing an inmate to participate in a treatment program premised on A.A. principles as a condition of participation in a family reunion program, was an impermissible violation of the Establishment Clause.

The *Warner* defendant moved for a rehearing, and on May 14, 1997, the Second Circuit amended its decision and also issued an order remanding the case to the District Court to address whether or not the plaintiff waived or forfeited his right to seek damages under § 1983 and whether or not the defendant raised the issue of waiver or forfeit at trial. The order also vacated the September 9, 1996, as amended on May 14, 1997, opinion.

Upon remand, the District Court affirmed its original determination. *Warner v. Orange County Department of Probation*, 968 F.Supp. 917 (S.D.N.Y.1997). In doing so, the Court noted the odd procedural posture of the case at that point by stating that "[t]he Court of Appeals Clerk's Office advises that both the original opinion and its amendment have been vacated by the order of remand so that no opinions remain outstanding." In a footnote to this comment, the Court said:

> We do not profess to understand why an amended opinion should be filed on the same date that it is to be vacated by an order of remand. Moreover, the Court of Appeals issued another order with respect to the petition for rehearing stating that the petition is "rendered moot in light of the amended opinion and order of remand issued May 14, 1997." That order suggests that the amended opinion still has vitality.

*Warner*, 968 F.Supp. at 918, n. 1.

Several months before the Second Circuit issued its original opinion in *Warner*, the New York State Court of Appeals had looked at the issue of required participation in a twelve-step program as a condition for eligibility for the family reunion program (precisely the same issue addressed by the Northern District in the *Boyd* decision several months earlier, *see* footnote 5 above). In *Griffin v. Coughlin*, 88 N.Y.2d 674, 649 N.Y.S.2d 903, 673 N.E.2d 98 (1996), the Court of Appeals found a violation of the Establishment Clause where the inmate's eligibility for the family reunion program was conditioned on his participation in the facility's Alcohol and Substance Abuse Treatment Program ("the ASAT Program"). The Court determined that the ASAT Program was based on the "Twelve Steps" and "Twelve Traditions" principles of Alcoholics Anonymous and Narcotics Anonymous. The Court then found the principles and practice of the ASAT Program to contain expressions and practices which have always been religious, which thus favors prisoners who adhere to religious beliefs, which symbolically condones the religious proselytizing that those expressions literally reflect, and which therefore in effect endorses religion.

In reaching this decision, the New York State Court of Appeals extensively reviewed the writings on which the ASAT Program (and A.A. and N.A.) is based and the methods used by the ASAT Program (and A.A. and N.A.), and found them unequivocally based on religious principles and spiritual ideas. The Court then determined that the "tenets and practices [of A.A., N.A. and the ASAT Program] necessarily entail religious exercise, [and therefore] the conclusion appears unavoidable that its use by the State correctional system as an essential compo-

nent of an exclusive, compulsory attendance ASAT Program violates the Establishment Clause [of the United States Constitution]." *Id.* at 686, 649 N.Y.S.2d 903, 673 N.E.2d 98.

Of particular importance to the *Griffin* determination was the fact that the facility offered no secular alternative. Either an inmate took part in the ASAT Program, or he was denied the opportunity to participate in the family reunion program. This compulsion without alternative was found to constitute improper State compulsion in a religious practice, based on the United States Supreme Court's decision in *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992).

> "It is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice.
>
> \* \* \* \* \* \*
>
> **Although our precedents make clear that proof of government coercion is not necessary to prove an Establishment Clause violation, it is sufficient.** Government pressure to participate in a religious activity is an obvious indication that the government is endorsing or promotion religion.
>
> \* \* \* \* \* \*
>
> [The Establishment Clause bars coercion by] force of law and threat of penalty [to engage in a religious activity, such as requiring a person to] attend church and observe the Sabbath."

*Griffin,* 88 N.Y.2d at 687–688, 649 N.Y.S.2d 903, 673 N.E.2d 98, *quoting Lee,* 505 U.S. at 596, 604, 640–41, 112 S.Ct. at 2660, 2664, 2683.

 Plaintiff here alleges that he was required to participate in N.A. as a condition for the restoration of his good time credits. He does not allege that he was offered a secular alternative. While neither the decision of another federal district Court or that of the New York State Court of Appeals regarding the interpretation of federal constitutional law are binding precedent, *see, e.g., Pauk v. Board of Trustees of the City University of New York,* 654 F.2d 856 (2d

Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982), I find the reasoning of the New York State Court of Appeals in *Griffin* and the Southern District Court of New York in *Warner* to be extremely persuasive. The emphasis placed on God, spirituality and faith in a "higher power" by twelve-step programs such as A.A. or N.A. clearly supports a determination that the underlying basis of these programs is religious and that participation in such programs constitutes a religious exercise. It is an inescapable conclusion that coerced attendance at such programs therefore violates the Establishment Clause. Moreover, I am unpersuaded by *Boyd* that the purportedly-secular purpose of the substance abuse program in the prison justifies the constitutional violation, and, instead, I agree with *Warner* regarding the irony of permitting the state to violate the Constitution in the guise of rehabilitating an inmate. *Warner,* 870 F.Supp. at 73.

In addition, while the procedural posture of the Second Circuit opinion(s) in *Warner* is unusual, the Court not only did not later recant its original determination that the coerced participation in a twelve-step program violated the Establishment Clause, but its later remand to examine the question of waiver or forfeiture in fact actually *assumes* the constitutional violation. Accordingly, I find that both binding precedent based on the Second Circuit decision in *Warner* and the persuasive discussions of the issue by the Northern District Court in *Warner* and the New York State Court of Appeals in *Griffin* require me to find for purposes of this initial review that plaintiff has sufficiently alleged a claim that TAC's requirement that plaintiff attend N.A. violated the Establishment Clause.

 Moreover, I have considered and rejected the proposition that the defendants may be entitled to the protections of a defense of qualified immunity in this situation. It is well settled that a defendant is entitled to qualified immunity if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not

violate such law. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). A right is "clearly established" if (1) it is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has affirmed its existence, or (3) a reasonable defendant would understand from existing law that his or her acts were unlawful. *Jeffries v. Harleston,* 21 F.3d 1238, 1248 (2d Cir.), *vacated on other grounds,* 513 U.S. 996, 115 S.Ct. 502, 130 L.Ed.2d 411 (1994).

■■■ This incident occurred in early 1998. At that time, the right to not be coerced to participate in a religious activity had been clearly described by the United States Supreme Court in the *Lee* and *Lynch* decisions, and the consequent right of an inmate not to be forced to participate in a program such a A.A. or N.A. without being offered a secular alternative had been clearly defined by the Second Circuit in *Warner,* the Southern District in *Warner,* and the New York State Court of Appeals in *Griffin.* Based on this, the reasonable defendant would have known that coerced participation in N.A. violates the Establishment Clause of the United States Constitution. Accordingly, the Court finds that the defendants are not protected by qualified immunity.

Therefore, plaintiff's Establishment Clause claim may go forward against defendants Underwood, Zeh, and Perkins.[6]

### The N.A. Conspiracy and Retaliation Claim

■■■ Plaintiff also claims that the requirement that he attend N.A. was reached as the result of a conspiracy (apparently in violation of 42 U.S.C. § 1985). To state a cause of action under § 1985, a plaintiff must allege:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws; (3) an act in

furtherance of the conspiracy; (4) whereby a person is either injured or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Securities,* 7 F.3d 1085, 1087–88 (2d Cir.1993) (*citing United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983)). For purposes of this initial review of plaintiff's allegations, the Court finds that he has sufficiently stated a claim that defendants Underwood, Zeh and Perkins conspired to deprive him of his constitutional rights under the Establishment Clause.

■■■ Plaintiff also claims that the requirement that he attend N.A. was imposed in retaliation for his litigation activities. However, plaintiff does not allege that he does not use narcotics, nor does he otherwise claim that there was no basis for the N.A. requirement. Therefore his baldly conclusory allegation fails to state a cognizable constitutional claim of retaliation, *Flaherty v. Coughlin,* 713 F.2d 10 (1983), and therefore is hereby dismissed with prejudice.

### The Motion for Default Judgment

Prior to the entry of this order, plaintiff had not been granted *in forma pauperis* status and his complaint had not been served. Therefore his motion for a default judgment (Docket # 4) is premature and is hereby denied.

### CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is hereby granted and, for the reasons discussed above, all of the claims except the claim against defendants Underwood, Zeh and Perkins regarding the alleged violation of the Establishment Clause and the alleged conspiracy against plaintiff are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e). Plaintiff's motion for entry of a default judgment is denied.

6. The Court takes no position on plaintiff's allegation that another individual, someone who is a

defendant in another of his lawsuits, also took part in this alleged constitutional deprivation.

320

## ORDER

IT HEREBY IS ORDERED, that the plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that all claims except the Establishment Clause claim and conspiracy claim against defendants Underwood, Zeh and Perkins are dismissed with prejudice;

FURTHER, that plaintiff's motion for entry of a default judgment is denied;

FURTHER, that the Clerk of the Court is directed to terminate defendants Jones, Murray, Goord and Selsky as defendants in this action;

FURTHER, that the Clerk of the Court is directed to file the plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, Amended Complaint, and this Order upon defendants Underwood, Zeh and Perkins, without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor; and

FURTHER, that the defendants are directed to answer the complaint.

SO ORDERED.